G. T. Swann, Auditor, &c., *vs.* George Work.

The right or duty sought to be enforced by a "writ of mandamus" must be certain. It will not lie if it is not so.

The return to the mandamus must state all necessary facts, so that the court can give judgment. The court cannot enter into an inquiry to ascertain the facts and settle or unsettle matters. *Held*, that the facts are to be shown by the return.

In error from the circuit court of Hinds county; Hon. Patrick W. Tompkins, judge.

The facts of this case are fully stated in the opinion of the court.

*D. C. Glenn*, attorney-general, for appellant.

1st. The claim of Work is wholly unsupported by proof.

2d. The case is not such as entitles him to the remedy by mandamus. 3 Black. Com. 110; 12 Peters, 640; 9 S. & M. 127; 2 Leigh, 147.

*George Work,* in person,

Cited 1 Cranch, 137; 9 S. & M. 90; 12 Peters, 614; *State* v. *Dickinson,* 12 S. & M. 579; *Swann* v. *Josselyn,* 14 Ib. 106; 8 Wend. 580–583.

Mr. Justice FISHER delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of Hinds county, at the May term thereof, 1850, awarding a peremptory mandamus against the auditor of public accounts, requiring him to issue a warrant for the sum of three thousand four hundred and ninety dollars, in favor of the defendant in error, on the treasurer of the State.

The case presented by the relator is briefly this. A statute was enacted in 1838, making the secretary of state, the auditor of public accounts, and the treasurer of the State commissioners to have a survey and plat made of all the unsold lots in the town of Jackson; and as soon as these duties were performed, the said commissioners were to cause a public sale of said lots to be made in the manner prescribed in the law, either by themselves or by an agent appointed by a majority of them. Under this provision of the statute, the relator was appointed agent to conduct said sale; and in performing this duty, he alleges that he wrote one hundred and forty mortgages, which were executed by purchasers of lots to secure the purchase-money, besides preparing about four hundred other papers, consisting of notes given by said purchasers and certificates of purchase issued to them; for all which services he charges the sum of four thousand two hundred and forty dollars.

The relator further avers, that by some means entirely unknown to him his claim was laid before the legislature, at its regular session, in 1839; and while he was confined at home by sickness, the legislature only allowed him the sum of seven hundred and fifty dollars in full of his account for four thou-

sand two hundred and forty dollars. On the 22d of February, 1839, he received a warrant from the auditor on the treasurer for the amount of this appropriation; and upon the receipt given to the auditor for the warrant, appears the following memorandum, to wit:

" I do not waive, by taking the above, the additional compensation I am entitled to for services in relation to the sale of lots in Jackson in 1838. (Signed) Geo. Work."

He next avers that the claim for the balance was laid before the legislature, at its regular session in 1840, for allowance and appropriation to pay the same; but that the legislature refused to allow the said balance.

It is finally stated that said claim, after the refusal on the part of the legislature to allow it, was laid before the auditor, and his action thereon requested, who likewise refused to allow the same.

The petition was filed on the 28th day of June, 1845, and to which the auditor immediately filed an answer, which has been treated as the return to the mandamus which issued in the alternative, requiring him to issue his warrant for the amount of the claim, or to show cause why he should not be compelled to issue it. This answer admits that the relator was appointed agent, as stated in his petition, and as such performed the services, as alleged in said petition. The answer, after stating other unimportant matters, employs this language, to wit: " Respondent admits that said petitioner, George Work, as stated in his petition, did demand of him the issuance of a warrant on the treasurer of the State in his favor for the amount claimed in said petition; but respondent declined a compliance with said demand, doubting whether, under a law which seemed designed only to govern the action of the parties immediately contracting, he had the power to act, and to settle an account which they should have settled, unless he was authorized to do so by some special act of the legislature.

" The legislature of 1839 having taken the matter into consideration, and having appropriated seven hundred and fifty dollars as a compensation for said services of said petitioner, had a tendency to increase respondent's doubts as to his power

to allow any thing more than had been received by virtue of said appropriation. Under this aspect of the case, respondent submits the facts, as above stated, to the court," &c.

The auditor further answers, that he was a member of the legislature at the regular session of 1840, and voted in favor of paying the balance of said claim, believing that injustice had been done to petitioner in the small amount allowed and appropriated at the previous session.

This is in substance the answer, or, more .properly speaking, the return to the first writ of mandamus, and which must govern us in our present investigation. .

"By the common law, the return to a mandamus in the alternative is to be taken as true, and the aggrieved party is left to his action for a false return." "By moving for a peremptory mandamus, the truth of the answer is admitted." *The Board of Police of Attala County* .v. *Grant,* 9 S. & M. 89. Adhering to this rule, we must determine whether the answer authorized the action of the court below, in ordering a peremptory mandamus to issue, requiring the auditor to issue his warrant on the treasurer for a sum certain; and this presents for our adjudication the question, whether the answer shows that the relator was entitled to such warrant.

The facts are clearly established by the answer, that the relator was appointed agent to manage the sale of said lots, and that he performed the services specified in his petition. This leaves but one question of fact to be considered, to wit, the value of the services rendered. Questions of law cannot properly arise, so long as a party's right to recover is a question of fact. We will, therefore, pass over the questions of law presented by the answer, to wit, whether the auditor, under the statute of 1838, possessed the power to examine and allow the relator's claim; and whether the act of 1839, allowing the sum of $750, was to be regarded by the auditor as a full and conclusive settlement of the whole account, and proceed to consider the question of fact — the value of the services. The law bearing upon this part of the case is thus stated by the late chief justice of this court, in the case already cited: "The right or duty sought to be enforced must be certain. It" (the writ)

"will not lie if it is not so." "Hence the return must state all necessary facts, so that the court can give judgment. The court cannot enter into an inquiry to ascertain the facts, and settle or unsettle matters." "The facts are to be shown by the return." We thus have the rules of law stated, which must guide us in investigating the facts. Does it, then, appear by the answer, that the State of Mississippi was indebted to the defendant in error in the sum of three thousand four hundred and ninety dollars, the amount of the judgment below ? The auditor says, that when the claim was before the legislature in 1840, he voted for paying it, because he considered it just. We thus have his opinion of the merits of the claim, while he was serving the State as a legislator; and it remains to be seen how far testimony of a claim laid before him, while discharging the duties of one office, will be equally binding upon him while discharging the duties of another and wholly different office. As a legislator, he could prescribe to himself any rule of action consistent with justice and equity, as to the allowance of a claim against the State, though wholly unauthorized by law; provided that there was no infraction of the constitution in creating the debt in the first instance. One of the great objects of legislation is, to modify the law wherein experience has shown that its operation, in particular cases, is not consistent with the dictates of natural justice. The legislature may, therefore, in almost every case in which the State alone is concerned, discard those rules of law which must be observed by the proper officer, in allowing claims against the State. The legislature is only required to act within the pale of the constitution, in performing its duties. This may be said to be the only law which controls its action; and when not thus restrained, it may look alone to the real justice and equity of every matter or question upon which it acts.

A different rule prevails, however, as to judicial and ministerial officers. They can only know equity or justice in the manner in which the law has defined it. They must act under the mandate of the law, and can only give the party such relief, on his claims against the State, as the law authorizes. The law only authorizes relief in a case in which the claim is

properly established by evidence. As to the claim now before us, the law has affixed no specific sum as the value of the services rendered; and hence the value is a question of evidence, which was never introduced before the auditor.

It is immaterial how just the claim may have appeared to be to the auditor, while he was a legislator; he is now to act on it in a different character, guided by different rules, and in this different character he must hear and decide upon the evidence. But admit, for the sake of the argument, that the impressions made upon the auditor's mind, while he was a legislator, are to be received as competent evidence to establish the claim; then the same kind of evidence is competent to rebut or defeat it, and the claim must still be lost upon the weight of evidence. The auditor says, that when he was a legislator the claim appeared to him to be just, and he, therefore, voted for paying it; but we find that a majority of the same body thought otherwise, and voted against the payment. Here is evidence which is but the impression made upon the mind of one man, rebutted by the same kind of evidence, the action of a majority of the legislature against the claim. Admitting, then, that the evidence is competent, it is completely destroyed by that which rebuts it. The return of the auditor must be construed with reference to this principle. As auditor, he said nothing and admitted nothing, as to the value of the services performed. The judgment must be based upon the return, which, failing to show that a claim for a sum certain had been established before the auditor, and by him so acknowledged, does not support the judgment of the court below.

What we have said in regard to the insufficiency of the return to sustain the judgment, applies with equal force to the showing made by the relator for the mandamus. He does not state that the claim had been either established by proper evidence before the auditor, or that the auditor in his official character deemed the charge a just claim against the State.

Judgment reversed; and this court, proceeding to render such judgment as the court below should have rendered, dismiss the said petition, and all proceedings based thereon.